## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY JOHN DEITRICK, | : | CIVIL NO.: 1:22-cv-01100 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

### I.  Introduction.

In this social security action, Plaintiff Anthony John Deitrick seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act.  We have jurisdiction under 42 U.S.C. § 405(g).  For the reasons set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 13-1* to

*13-13*.[1]  On January 30, 2017, Deitrick protectively filed[2] an application for

disability insurance benefits, alleging that he has been disabled since July 30, 2014.

*Admin. Tr.* at 122, 151–55.[3]   In August 2018, Deitrick, who was represented by

counsel, as well as a vocational expert testified at a hearing before Administrative

Law Judge Michelle Wolfe. *Id.* at 69–95.  In December 2018, ALJ Wolfe denied

Deitrick's claim for benefits. *Id.* 7–23.  In so doing, ALJ Wolfe concluded that

Deitrick's date last insured[4] and his alleged onset date, i.e., the date that he became

---

[1] Because the facts of this case are well known to the parties, we do not
repeat them here in detail.  Instead, we recite only those facts that bear on
Deitrick's claims.

[2] "Protective filing is a term for the first time an individual contacts the
Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No.
3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A
protective filing date allows an individual to have an earlier application date than
the date the application is actually signed." *Id.*  Here, Deitrick's application for
benefits is dated February 7, 2017. *See Admin. Tr.* at 151–55.  But there are
references in the record to the filing date as January 30, 2017. *See id.* at 122.

[3] This is not the first application for disability benefits that Deitrick filed.
*See Admin. Tr.* at 96–110 (January 2013 decision of Administrative Law Judge
Michele Stolls denying Deitrick's claim for benefits submitted in 2011 and
mentioning a prior 2009 claim).  Since Deitrick's prior claims are not relevant to
the instant case, we do not mention them further.

[4] "Disability insurance benefits are paid to an individual if that individual is
disabled and 'insured,' that is, the individual has worked long enough and paid
social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1

disabled, were both December 31, 2014. *Id*. at 10, 12.   Deitrick appealed the

ALJ's decision to the Appeals Council, which denied his request for review. *Id*. at

1–6.   Deitrick then filed an action in this court. *See Deitrick v. Saul*, 4:20-cv-00350

(M.D. Pa.).   The Commissioner filed an uncontested motion to remand, and on

November 19, 2020, Magistrate Judge Arbuckle granted that motion to remand,

and remanded the case to the Commissioner for a new hearing before a different

administrative law judge. *See docs. 16–18* in *Deitrick v. Saul*.

On remand, the Appeals Council vacated ALJ Wolfe's decision, and it

remanded the case to a different administrative law judge with instructions to offer

Deitrick the opportunity for a hearing, to take any further action needed to

complete the record, and to issue a new decision. *Id*. at 622–27.   Thereafter,

Administrative Law Judge Charles Dominick (hereinafter "the ALJ") held a

hearing at which Dietrick again testified and another vocational expert testified. *Id*.

at 561–90.   And by a decision dated June 3, 2021, the ALJ determined that

Deitrick was not disabled at any time from July 30, 2014, his alleged onset date,

through December 31, 2014, his date last insured. *Id*. at 554.   Deitrick appealed

this decision to the Appeals Council, which denied his request for review. *Id*. at

---

n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last
date that an individual meets the requirements of being insured is commonly
referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)).  Here, the
ALJ determined that Deitrick met the insured-status requirements through
December 31, 2014. *Admin. Tr.* at 542.

525–31.  This makes the ALJ's decision the final decision of the Commissioner

subject to judicial review by this Court.

In July 2022, Deitrick, represented by counsel, began this action by filing a

complaint claiming that the Commissioner's decision is not supported by

substantial evidence and is contrary to law. *See Doc. 1.*  He requests that the court

reverse the Commissioner's decision and award him benefits or, in the alternative,

remand the case for further proceedings. *Id.* at 3 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28

U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 11.*  The

Commissioner then filed an answer and a certified transcript of the administrative

proceedings. *Docs. 12, 13.*  The parties filed briefs, *see docs. 16–18,* and this

matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's

application for benefits, "the court has plenary review of all legal issues decided by

the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

But the court's review of the Commissioner's factual findings is limited to whether

substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Deitrick is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).  Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On June 3, 2021, the ALJ denied Deitrick's claim for benefits. *Admin. Tr.* at 537–59.  He proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Deitrick had not engaged in substantial gainful activity since the alleged onset date. *Id.* at 542.

8

**B.  Step Two.**

At step two of the sequential-evaluation process, the ALJ found that Deitrick

had the following severe impairments: degenerative disc disease of the lumbar and

cervical spine with history of lumbar and cervical spine fusion surgeries. *Id.* at 543.

He also found that although Deitrick had anxiety and depression, those

impairments were not severe. *Id.* 543–44.[5]

**C.  Step Three.**

At step three of the sequential-evaluation process, the ALJ found that

Deitrick did not have an impairment or combination of impairments that met or

medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1. *Id.* at 544.  Specifically, that ALJ considered Listings 1.15 and 1.16 with respect

to Deitrick's degenerative disc disease. *Id.* at 544–45.

**D.  The RFC.**

The ALJ then determined that through the date last insured, Deitrick had the

RFC to do sedentary work[6] with some limitations. *Id.* at 545–46.  He concluded

---

[5] Because none of Deitrick's claims in the instant case concern his
depression or anxiety, we do not mention those impairments further, including
when summarizing the ALJ's decision at the remaining steps of the sequential-
evaluation process.

[6] *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more
than 10 pounds at a time and occasionally lifting or carrying articles like docket

that Deitrick "cannot stand or walk for more than 15 minutes at one time without being given the opportunity to sit for at least 30 minutes[.]" *Id*. 546. He also determined that Deitrick "is limited to no more than occasional balancing, stooping, crouching, kneeling and climbing of ramps and stairs[,]" and "he must never crawl, or climb ladders, ropes, or scaffolds[.]" *Id*. The ALJ further limited Deitrick "to no more than frequent reaching, handling and fingering, but he must avoid overhead reaching[.]" *Id*. The ALJ also determined that Deitrick "must avoid concentrated exposure to vibrations and hazards, including moving machinery and unprotected heights." *Id*.

In making this RFC assessment, the ALJ reviewed Deitrick's assertions and testimony. *Id*. at 546–47. The ALJ also reviewed Deitrick's medical records going back to 2009, he acknowledged that "on March 22, 2012, [Deitrick] underwent decompression L4-5 and decompression left L5-S1 with posterior instrumented fusion, L2 to the scrum, utilizing right posterior iliac crest graft," and he reviewed Deitrick's medical records going forward to 2021. *Id*. at 547–50. As relayed by the ALJ, after his 2012 surgery, medical records showed that Deitrick improved but

---

files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

still had issues including pain. *Id*. at 547.  In June 2014, Deitrick completed

physical therapy. *Id*. at 548; *see also id*. at 517 (June 16, 2014 Patient Discharge

Summary).  The ALJ summarized Deitrick's medical records from the relevant

time period:

> In August 2014, he reported continuing to have chronic back
> pain and that his left leg gave out on him twice without warning
> and he fell.  Clinical findings noted positive straight leg raise,
> difficulty with heel and toe walking, decreased left grip strength
> as 4/5 with some left thumb oppositional weakness, but 5/5 on
> his right side.  He had intact coordination and fine motor and no
> loss of sensation in upper and lower extremity.  He was advised
> to follow up with his orthopedic surgeon due to complaints of
> falls from his left leg giving out on him.
>
> On September 3, 2014, the claimant was seen by his orthopedic
> specialist, and treatment notes indicated that the claimant was
> "doing very well" and he was "markedly improved" from
> preoperative status.  However, he was not completely pain-free.
> He reported unresolved back pain from twisting in an awkward
> position, but there are no reports of falls or balance issues were
> noted.  Clinical findings of the claimant's lumbar spine showed
> left sided tenderness and discomfort with certain movement
> such as rotation, but negative straight leg raise, normal motor
> and sensation of his lower extremities, and no redness or
> swelling.  He was advised to return in one year for a follow up.
>
> In October 2014, the claimant continued to report pain that was
> at a 7 on a scale from 1-10, and he continued to use pain relief
> medications.  Clinical findings continued to show 4/5 left grip
> strength, left calf and thigh atrophy, and some weakness with
> oppositional left thumb.  He had a positive straight leg raise
> bilaterally and difficulty with heel and toe walking, but no loss
> of sensation in his upper and lower extremities, intact
> coordination with fine motor activity, and good range of motion
> with no deformities.  He continued to be treated conservatively.
> In December 2014, he reported having daily pain of 4 or 5 out

of a scale of 10, and he had a new onset of cramping down his
right leg to his toes. Clinical findings of the claimant's spine
showed well healed incision and minimal lumbar spasms
bilaterally. He continued to have decreased grip strength of 4/5
at left compared to 5/5 at right and positive straight leg raise.
He continued to be treated conservatively by his primary care
provider with pain relief medications and he was advised to
follow up with his orthopedic specialist.

*Id*. at 548–49. The ALJ also summarized the medical records from 2015 through

2021. *Id*. at 549–50.

After reviewing the medical records, the ALJ concluded that Deitrick's

statements about his symptoms were inconsistent with those records and the record

as whole. *Id*. at 550. In this regard, he found that Deitrick's complaints were "out

of proportion with the frequency and extent of medical treatment" that Deitrick

sought during the relevant period. *Id*. And he reasoned that "[a]lthough the

claimant had a back injury that resulted in back surgery in 2012, the claimant's

physical health treatment history, including with multiple specialists, indicated he

has significant improvements after surgery and his treatment was minimal." *Id*.

In making the RFC assessment, the ALJ also considered the opinion

evidence in the record. *Id*. at 550–52. He gave the opinion of Dr. Monfared, a

consultative examiner, who examined Deitrick in August 2018, only some weight

and found it not fully persuasive because, among other reasons, Dr. Monfared's

opinion was based on an examination that took place "approximately four years

after [Deitrick's] alleged onset date in 2014 and Dr. Monfared did not indicate that the functional limitations began in 2014." *Id*. at 550.

On March 24, 2017, Dr. Calise, "a state agency medical consultant, reviewed the record and opined that the claimant was limited to lifting and carrying up to ten pounds occasionally and frequently, standing and/or walking for six hours in an eight hour work day, and sitting for six hours in an eight hour workday." *Id*. at 551. The ALJ explained that he did not find Dr. Calise's opinion fully persuasive, and he gave it some weight. *Id*. Although the ALJ concluded that Dr. Calise's opinion was "supported by a summary analysis of the claimant's symptom complaints and treatment history," the ALJ explained that Deitrick was more limited than Dr. Calise found him to be as Deitrick had "greater postural, upper extremity use, and environmental condition limitations . . . ." *Id*.

The ALJ gave the February 15, 2021 opinion of Dr. Gillick little weight and found if not persuasive. *Id*. As recounted by the ALJ, Dr. Gillick

> Completed a medical assessment checkmark type form about
> the claimant's physical ability to do work related activities and
> opined that as of September 3, 2014, the claimant was limited
> to ten minutes of sitting at one time and fifteen minutes of
> standing at one time; he was limited to sitting for two hours
> total and standing/walking for about two hours in an eight hour
> work day. Dr. Gillick further opined that the claimant was
> limited to lifting and carrying 10 pounds rarely and less than 10

pounds occasionally, and that he had "good" and "bad" days,
and he would be expected to be absent for more than four days
per month.

*Id*.

Although the ALJ acknowledged that " Dr. Gillick was the claimant's

orthopedic surgeon and examined the claimant on a routine basis for several

years," the ALJ concluded that this opinion by Dr. Gillick was "not supported by

any specific clinical or diagnostic findings and such extreme limitations are not

consistent with Dr. Gillick's treatment notes." *Id*.  In the latter regard, the ALJ

explained: "For example, on September 5, 2014, Dr. Gillick indicated that the

claimant had left sided low lumbar tenderness and discomfort with certain

movements, especially rotation; however, he had fairly good flexion and extension,

negative straight let raise, and normal motor and sensation." *Id*.

In a treatment note from September 12, 2016, Dr. Gillick "indicate[d] that

the claimant was unable to return to his physical job." *Id*.  The ALJ gave this

opinion some weight and found "it somewhat persuasive since it is consistent with

the claimant's back injury and surgery." *Id*.  But the ALJ noted that this treatment

note was "not a function-by-function medical opinion and it is a vague conclusive

statement and not supported by any specific clinical findings." *Id*.

In February 2021 progress note, Dr. Gillick stated: "I feel he is capable of

part duct at work on a regular basis." *Admin. Tr.* at 808 (errors in original).  The

14

ALJ found this statement unpersuasive and gave it no weight because it is unclear

and not a functional medical opinion. *Id*. at 551.

The ALJ also considered the opinion of Dr. Jiunta that Deitrick could not

work:

> On April 6, 2011, Dr. James Jiunta, D.O. completed a disability
> claim form and indicated that the claimant was unable to work
> from June 18, 2009 to April 6, 2011 due to multilevel disc
> degenerative aggravated by spinal stenosis L2-3, L5-S1 disc
> protrusion, and chronic lumbar back pain.  Treatment notes
> from Jiunta in 2010 and 2011 repeatedly indicated that the
> claim was permanently and totally disabled.  Treatment notes
> by Dr. Jiunta in 2013 noted that he was advised to be cautious
> with his activity, not to do any lifting, and not to work solely
> based on his back injury.  Treatment notes by Dr. Jiunta in 2014
> noted that the claimant was told not to work solely on the basis
> of his work-related injury.  The undersigned finds these
> statements not persuasive and gives them no weight since they
> are not function by function medical opinions and conclusive
> statements.  Although they are supported by clinical
> examinations of the claimant, the definitions of being
> permanently and totally disabled or being unable to work are
> unclear.

*Id*. at 551–52.

In summary, the ALJ concluded that based on Deitrick's "history of neck

and back surgery and clinical findings during the relevant period at issue[,]"

Deitrick had the RFC to do a limited range of sedentary work as set forth above.

*Id*. at 552.

15

### E.  Step Four.

At step four of the sequential-evaluation process, the ALJ found that Deitrick was unable to perform his past relevant work as a chemical delivery driver, truck driver, masonry laborer, or lineman. *Id*. at 552–53.

### F.  Step Five.

At step five of the sequential-evaluation process, considering Deitrick's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as order clerk, charge account clerk, and addresser—that exist in significant numbers in the national economy that Deitrick could perform. *Id*. at 554.

In sum, the ALJ concluded that Deitrick was not disabled "at any time from July 30, 2014, the alleged onset date, through December 31, 2014, the date last insured." *Id*.  Thus, he denied Deitrick's claim for benefits. *Id*.

## V.  Discussion.

Deitrick presents four claims: (1) the ALJ rejected the opinions of his treating orthopedic surgeon without good reasons; (2) the ALJ rejected the opinions on his treating physician without good reasons; (3) the ALJ relied solely on his lay judgment in finding him capable of sedentary work without support of any medical source; and (4) the ALJ failed to present a hypothetical question to the

vocational expert containing all of his credibly established limitations.  As claims one and two both deal with how the ALJ weighed the opinions of Deitrick's treating providers, we address those claims together.  We then address the other two claims.  For the reasons discussed below, we conclude that Deitrick's claims are without merit.

### A. The ALJ did not err in his evaluation of the treating provider's opinions.

Deitrick contends that the ALJ rejected the opinions of his treating orthopedic surgeon—Dr. Gillick—and his treating physician—Dr. Jiunta—without good reasons.  We disagree.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (applicable to claims filed before Mar. 27, 2017).  "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).  But for claims—like Deitrick's—filed before March 27, 2017, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions

reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).  The applicable regulations provide that if "a treating source's medical opinion on the issue(s) of nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the Commissioner "will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). Where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors including, the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. 20 C.F.R. § 404.1527(c)(2)–(c)(6).

The regulations also provide, however, that opinions on issues reserved for the Commissioner—such as whether a claimant is disabled and a claimant's residual functional capacity—are not considered medical opinions under the regulations and are not entitled to any "special significance" based on the source of the opinion. 20 C.F.R. § 404.1527(d).  Nevertheless, "[t]he ALJ must consider the

medical findings that support a treating physician's opinion that the claimant is disabled." *Morales*, 225 F.3d at 317.

"In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id*. at 317–18 (quoting *Plummer*, 186 F.3d at 429). The ALJ also may not disregard a treating physician's "medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility.'" *Id*. at 318 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)).

Further, the ALJ must "provide 'good reasons' in his decision for the weight he gives to a treating source's opinion." *Ray v. Colvin*, No. 1:13-CV-0073, 2014 WL 1371585, at *18 (M.D. Pa. Apr. 8, 2014) (quoting 20 C.F.R. § 404.1527(c)(2)). "A decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. (quoting *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting in turn *Soc. Sec. Rul. 96–2p,* 1996 WL 374188, *5 (1996)).

In evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620.  Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Here, the ALJ explained the weight he gave to the opinions of Dr. Gillick and Dr. Jiunta and the reasons for giving such weight.  We begin with Dr. Gillick. As the above summary of the ALJ's decision shows, the ALJ addressed three opinions of Dr. Gillick, but in this brief, Deitrick takes issue only with how the ALJ treated Dr. Gillick's February 15, 2021 medical assessment.  The ALJ noted that that assessment was a "checkmark type form," that the opinion was "not supported by any specific clinical or diagnostic findings," and that the opinion was "not consistent with Dr. Gillick's treatment notes[,]" specifically his September 5,

2014 treatment note[7] that "indicated that the claimant had left sided low lumbar tenderness and discomfort with certain movements, especially rotation; however he had fairly good flexion and extension, negative straight leg raise, and normal motor and sensation." *Admin. Tr.* at 551.

Deitrick argues that in concluding that Dr. Gillick's opinion was not consistent with his treatment notes, the ALJ myopically focused on one treatment note—the September 2014 treatment note—and ignored other treatment notes by Dr. Gillick. But the September 2014 treatment note from Dr. Gillick is the only one in the record that is from the applicable time here, i.e., from the alleged onset date of July 30, 2014, to the date last insured of December 31, 2014. Thus, the ALJ's focus on the September 2014 treatment note is understandable and appropriate.

Deitrick also argues that the ALJ substituted his opinion for the opinion of Dr. Gillick, which was inappropriate. But that is not what the ALJ did here. Reading the ALJ's decision as a whole, the ALJ summarized the medical records during the relevant time period as well as medical records for years before and years after the relevant time period, but when considering Dr. Gillick's February 15, 2021 opinion, the ALJ focused on the one medical record from Dr. Gillick

---

[7] This treatment note is dated September 3, 2014, but at the bottom of the note is a notation "d/t 09/05/14," which from the context, we assume is the date the note was transcribed.

during the relevant time period.  In the circumstances of this case, where the medical records support an inference that Deitrick's condition changed over time—worse before his 2012 surgery; improved after the surgery, but his pain and condition not completely resolved; worsening again as time went on—it was appropriate for the ALJ to focus on whether Dr. Gillick's opinion was consistent with his one treatment note during the relevant time.  And the ALJ explained why he found Dr. Gillick's February 15, 2021 opinion to be inconsistent with that note. Although the ALJ's discussion of Dr. Gillick's February 2021 opinion could have been more robust, we conclude that he adequately explained his reasons for giving little weight to this opinion and those reasons were within the ALJ's purview.

Similarly, we conclude that the ALJ properly considered the opinions of Dr. Jiunta that Deitrick could not work.  The ALJ found these opinions not persuasive because "they are not function by function medical opinions and [are] conclusive statements[,]" explaining that although "they are supported by clinical examinations of the claimant, the definitions of being permanently and totally disabled or being unable to work are unclear." *Id*.

Pointing to a function-by-function medical source statement provided by Dr. Jiunta from 2011, Deitrick contends that the ALJ's contention that Dr. Jiunta's conclusion that Deitrick cannot work was not a function-by-function medical opinion was a mistake of fact.  It is true that the ALJ did not mention that medical

22

source statement.  But any error in that regard was harmless given that that medical source statement was from 2011, which was before Deitrick had his surgery, and does not pertain to the relevant time period.  And the ALJ was correct that Dr. Jiunta did not point to a function-by-function assessment to support his opinion during the relevant time period that Deitrick was unable to work.

Deitrick also contends that the ALJ erred in rejecting the opinion by Dr. Jiunta because that opinion was supported by clinical findings.  Although Dr. Jiunta made clinical findings in his treatment notes, his statement that Deitrick could not work was, as the ALJ observed, a conclusion.  Moreover, the statement that a claimant cannot work is a conclusion that is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1), (3); *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 688 (3d Cir. 2020) ("Further, the ALJ is not bound by the conclusion of a treating physician that the claimant is disabled or unable to work, as that decision is the ALJ's to make."); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 n.2 (3d Cir. 2008) (noting that Dr.'s testimony that the claimant's "impairments rendered her 'unable to perform not only her past relevant work, but several other jobs which were offered during the course of her Workers' Compensation claim,' was "not the sort of treating source medical opinion entitled to any kind of weight"); *Adorno v. Shalala*, 40 F.3d 43, 47–48 (3d Cir. 1994) ("We recognize, of course, that a statement by a plaintiff's treating physician supporting an assertion

23

that she is 'disabled' or 'unable to work' is not dispositive of the issue.").  Thus, the ALJ did not err in giving no weight to Dr. Jiunta's statement that Deitrick could not work.

### B. The ALJ did not err by concluding that Deitrick could do a limited range of sedentary work.

Deitrick claims that the ALJ erred and abused his discretion by concluding that he had the RFC to do a limited range or sedentary work without any medical support for that determination.  But, as explained below, that is not what happened here.  Thus, we conclude that this claim is without merit.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential,

and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, in setting the RFC, the ALJ must clearly articulate his or her reasoning.  In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05).  Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

Applying the above standards to the present record, we conclude that the ALJ's RFC determination is supported by substantial evidence. First, contrary to Deitrick's suggestion otherwise, the ALJ did not reject all the opinion evidence in the record. As discussed above, the ALJ gave little weight to Dr. Gillick's February 2021 opinion and no weight to Dr. Jiunta's opinion that Deitrick could not work. But that was not the only opinion evidence in the record concerning Deitrick's physical condition. As the earlier summary of the ALJ's opinion shows, the ALJ gave some weight to both the opinion of Dr. Monfared, a consultative examiner, and the opinion of Dr. Calise, the state agency medical consultant. *See Admin. Tr.* at 550–51. Although he gave only some weight to the opinions of Dr. Monfared and Dr. Calise, he did so for different reasons. As to Dr. Monfared, he did not fully credit that opinion as he concluded that as to some of the limitations set forth by Dr. Monfared, Deitrick was not as limited as Dr. Monfared opinion. Conversely, the ALJ found that Deitrick was more limited in some ways than Dr. Calise concluded he was.

"Surveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). Here, the ALJ considered the record as a whole, including the opinion

26

evidence, and he adequately explained his decision to limit Deitrick to sedentary

work with some limitations.

We note that a different factfinder may well have come to a conclusion

different from the ALJ in this case.  But we cannot reweigh the evidence.

*Chandler*, 667 F.3d at 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh

the evidence or impose their own factual determinations."); *Rutherford*, 399 F.3d

at 552 ("In the process of reviewing the record for substantial evidence, we may

not 'weigh the evidence or substitute [our own] conclusions for those of the fact-

finder.'" (citation omitted)).  And "[t]he presence of evidence in the record that

supports a contrary conclusion does not undermine the Commissioner's decision so

long as the record provides substantial support for that decision." *Malloy v.

Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).  Here, the ALJ

fulfilled his duty in evaluating the evidence and explaining why he chose to credit

some evidence over other evidence.  Accordingly, we conclude that the ALJ's

decision regarding Detrick's RFC is supported by substantial evidence.


### C.  The ALJ did not err in connection with the vocational expert's testimony.

Deitrick contends that the ALJ did not include all his credibly established

limitations in his hypothetical to the vocational expert.  The United States Court of

Appeals for the Third Circuit has held that a vocational expert's testimony is not

substantial evidence if the ALJ did not include in the hypothetical to the vocational

expert all the claimant's impairments:

> Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny*,745 F.2d at 218.  A hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments." *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir.1987) (emphasis added).  Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence. *Podedworny,* 745 F.2d at 218 (citing *Wallace v. Secretary of Health & Human Servs.,* 722 F.2d 1150, 1155 (3d Cir.1983)).

*Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).  But an ALJ is not required

"to submit to the vocational expert every impairment *alleged* by a claimant."

*Rutherford*, 399 F.3d at 554 (italics in original).  Rather, "the ALJ must accurately

convey to the vocational expert all of a claimant's *credibly established*

*limitations.*" *Id*. (italics in original) (citation and footnote omitted).

"[O]bjections to the adequacy of hypothetical questions posed to a

vocational expert often boil down to attacks on the RFC assessment itself." *Id*. at

554 n.8.  A claimant may claim that the ALJ erred by relying on the testimony of

the vocational expert "because the ALJ failed to convey limitations to the

vocational expert that were properly identified in the RFC assessment." *Id*.  Or a

claimant may claim that the ALJ erred by relying on the testimony of the vocational expert "because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert." *Id*.  "Challenges of the latter variety . . . are really best understood as challenges to the RFC assessment itself." *Id*.

Here, Deitrick concedes that in response to a hypothetical that included the limitations that the ALJ ultimately determined that Deitrick had, the vocational expert testified that there were sedentary positions that such a hypothetical person could perform.  But in response to a hypothetical question that contained additional limitations consistent with Dr. Gillick's opinion of Deitrick's limitations, the vocational expert testified that there was no work that such a hypothetical could perform.  Deitrick contends that the ALJ should have relied on the latter hypothetical, rather than the former.  But as discussed above, the ALJ did not err in his treatment of the opinion evidence or in setting of the RFC.  Thus, Deitrick's claim regarding the ALJ's reliance on the testimony of the vocational expert fails.

## VI.  Conclusion.

For the foregoing reasons, we affirm the decision of the Commissioner.  An appropriate order follows.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge